Douglas F. Broder (DB 8406)
Rebecca L. Misner (RM 8086)
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
599 Lexington Avenue
New York, New York 10022
Telephone:   212-536-3900
Facsimile:   212-536-3901
Email: douglas.broder@klgates.com
Email: rebecca.misner@klgates.com

*Attorneys for Plaintiffs TPC Operating, LLC
and Lenny Dykstra*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
TPC OPERATING, LLC, a California limited
liability company, and LENNY DYKSTRA,

          Plaintiffs,

     v.

DOUBLEDOWN MEDIA, LLC, a New York
limited liability company, and RANDALL LANE,

          Defendants.
----------------------------------------------------------X

Index Number: _____

Judge: _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

## PARTIES

1.    Plaintiff TPC Operations, LLC ("TPC") is a limited liability company duly formed and existing under the laws of the State of California with its principal place of business in the State of California. TPC does business under the name "The Players Club."

2.    Plaintiff Lenny Dykstra ("Dykstra") is an individual and is a citizen of the State of California. Dykstra is the president of TPC. Dykstra is well known both as a former major league baseball player and as a widely-published investment strategist.

3.    Upon information and belief, Defendant Doubledown Media, LLC ("Doubledown") is a limited liability company organized and existing under the laws of the State New York, with its principal place of business in New York, New York.

4. Upon and information and belief, Defendant Randall Lane ("Lane") is an individual and a citizen of the State of New York. Lane is the President of Doubledown.

## DIVERSITY JURISDICTION UNDER 28 U.S.C. §1332

5. TPC is organized in California and its principal place of business is in California.

6. Dykstra resides in California.

7. Doubledown is organized in New York and has its principal places of business in New York.

8. Upon information and belief, Lane resides in New York.

9. Complete diversity of citizenship exists under 28 U.S.C. §1332.

10. As reflected in the paragraphs below, the amount in controversy exceeds $75,000.00 in monetary damages.

## VENUE

11. A substantial part of the events giving rise to the claims in this action took place in this judicial district. Upon information and belief, both defendants reside in the State of New York and Defendant Doubledown resides in this judicial district.

12. Venue is proper under 28 U.S.C. §1391(a)(1) and (2).

## AS AND FOR A FIRST CAUSE OF ACTION

### Breach of Contract

### (By Plaintiff TPC against Defendant Doubledown)

13. TPC is the owner and publisher of a monthly magazine entitled The Players Club (hereinafter the "Magazine").

14. TPC engaged Doubledown to provide services to TPC in connection with the production of the first two issues of the Magazine for which TPC agreed to and did pay Doubledown a set fee of $50,000 per issue.

15. TPC published and distributed the first issue of the Magazine on or about April 1, 2008.

16. The second issue of the Magazine was scheduled to be printed and distributed by May 1, 2008.

17. On Sunday, April 20, 2008, Lane, on behalf of Doubledown, demanded payment of unsubstantiated additional sums from TPC and threatened to interfere with the printing of the second issue of the Magazine which was scheduled for April 21, 2008, unless TPC complied with the demands and wired the demanded sums to Doubledown by April 21, 2008.

18. TPC denied that the demanded sums were owing and demanded, *inter alia*, that (a) Doubledown refrain from interfering with the printing of the magazine; and (b) perform its obligations under its agreement with TPC such that the second issue of the Magazine would be timely printed and distributed.

19. In breach of its obligations under its agreement with TPC, Doubledown and Lane have, *inter alia*, wrongfully (a) instructed the printer not to print the second issue of the Magazine; (b) engaged in affirmative actions designed to block the printing and distribution of the Magazine; (c) refused to release materials and property to TPC which are rightfully owned by TPC; and (d) failed and refused to perform Doubledown's obligations in connection with the second issue of the Magazine.

20. TPC has performed all covenants and conditions of the agreement with Doubledown except as excused by Doubledown's breach or otherwise.

21. As a direct and proximate result of Doubledown's breach of contract, TPC has suffered damages in an amount in excess of $500,000 which shall be established at trial.

## AS AND FOR A SECOND CAUSE OF ACTION

### Tortious Interference with Contractual and other Business Relations

### (By Plaintiffs TPC and Dykstra against Defendants Lane and Doubledown)

22.     Paragraphs 1 through 21 of this Complaint are repeated and realleged as if fully set forth herein.

23.     On or about April 22, 2008, all materials necessary for the printing of the second issue of the Magazine had been delivered to the printer, Fry Communications, Inc. ("Fry"). Upon information and belief, Fry was ready, willing and able to commence the printing process for the second issue of the Magazine.

24.     On or about April 22, 2008, and at times thereafter, Doubledown and Lane took, *inter alia*, the following actions which were intended to and did interfere with TPC's contractual and business relations relating to, among other things, the printing and distribution of the second issue of the Magazine:

(a)     Doubledown and Lane contacted Fry and instructed Fry to refrain from printing the second issue of the Magazine;

(b)     Doubledown and Lane contacted Fry and instructed Fry not to release any materials relating to the Magazine to TPC or its representatives, including, without limitation, distribution lists and cover materials;

(c)     Doubledown and Lane contacted the magazine designer retained by TPC, Mitch Shostak and Mitch Shostak Studios, Inc. (together, "Shostak"), and instructed Shostak not to fulfill Shostak's obligations under Shostak's agreement with TPC in connection with the publication of the Magazine;

(d)   Doubledown and Lane improperly threatened to sue Shostak if Shostak fulfilled Shostak's obligations to TPC under Shostak's agreement with TPC in connection with the Magazine;

(e)   Upon information and belief, Doubledown contacted other individuals and entities with whom TPC had agreements or business relationships and interfered with those agreements and relationships in order to prevent the printing and distribution of the second issue of the Magazine.

25.   Upon information and belief, Doubledown was aware of TPC's contractual and business relations with Fry, Shostak and other individuals and entities.

26.   Upon information and belief, Doubledown intentionally and unlawfully interfered with TPC's contractual and business relations with Fry, Shostak and other individuals and entities without justification.

27.   TPC has no obligation to use Doubledown's services for the third issue of the Magazine and Doubledown has no rights relating to third issue of the Magazine.

28.   TPC has entered into a relationship with a third-party ("Third-Party") other than Doubledown in connection with the publication and printing of the third issue.

29.   Doubledown was aware that TPC had entered into a relationship with Third-Party for the publication and printing of the third issue of the Magazine.

30.   On or about April 22, 2008, Doubledown sent a written communication to Third-Party falsely representing to Third-Party that Doubledown had an exclusive right to provide publishing services and seeking to disrupt TPC's business relationship with Third-Party.

31.   Doubledown intentionally, maliciously and unlawfully interfered with TPC's contractual and business relations with Third-Party without justification.

32. Doubledown's intentional and unjustified interference with TPC's contractual and business relations with Fry, Shostak, Third-Party and other individuals and entities has resulted in damages to TPC in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION

### Conversion

**(By Plaintiff TPC against Defendants Doubledown and Lane)**

33. Paragraphs 1 through 32 of this Complaint are repeated and realleged as if fully set forth herein.

34. TPC is the owner of distribution lists, cover materials, and other materials related to the second issue of the Magazine (the "TPC assets").

35. Without TPC's knowledge and consent, Defendants Doubledown and Lane exercised unlawful dominion and control over TPC's property when they wrongfully refused to release the TPC assets.

36. Doubledown and Lane have converted the TPC assets for their own use and benefit or for the use and benefit of another.

37. The foregoing unlawful acts by Doubledown and Lane have interfered with and were and are in defiance of TPC's possessory rights to the TPC assets.

38. As a direct and foreseeable result of the foregoing acts of conversion and as a proximate result thereof, TPC has been injured and suffered damages in an amount to be determined at trial.

39. Doubledown and Lane's conduct was gross, willful and wanton and in conscious disregard of TPC's rights. TPC is therefore entitled to recover an award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION

### Conversion

### (By Plaintiff Dykstra against Defendants Doubledown and Lane)

40. Paragraphs 1 through 39 of this Complaint are repeated and realleged as if fully set forth herein.

41. Dykstra has conceived an investment strategy involving deep in the money ("DITM") calls and has written extensively on the subject.

42. Beginning in or about 2007, Dykstra developed the idea of creating an investment newsletter entitled "The Dykstra Report" which could be sold to investors and which would provide information regarding his DITM calls investment strategy.

43. Dykstra informally discussed with Defendants Doubledown and Lane his idea of developing The Dykstra Report but no agreement was reached whereby Doubledown would publish the newsletter.

44. Doubledown and Lane registered the domain name "Thedykstrareport.com" in Doubledown's name without Dykstra's consent and without any right to own or utilize "Thedykstrareport.com" domain name or Dykstra's name in any form.

45. Through the website Thedystrareport.com, Doubledown solicited subscriptions, for a fee, to The Dykstra Report newsletter. Upon information and belief, Doubledown received approximately $70,000 for subscriptions to the newsletter.

46. Dykstra and his counsel asked Doubledown and Lane to shut down the website and turn over to Dykstra the list of subscribers to the newsletter and the approximately $70,000 of subscription payments that Doubledown and Lane had collected. The subscription list and the subscription money are property rightfully belonging to Dykstra.

47. Despite such requests, Doubledown and Lane have refused to shut down the website and turn over the list of subscribers and the subscription money to Dykstra.

48. Doubledown and Lane have converted Dykstra's property for their own use and benefit or for the use and benefit of another.

49. The foregoing unlawful acts by Doubledown and Lane have interfered with and were and are in defiance of Dykstra's rights to his property.

50. As a direct and foreseeable result of the foregoing acts of conversion and as a proximate result thereof, Dykstra has been injured and suffered damages in an amount to be determined at trial.

51. Doubledown and Lane's conduct was gross, willful and wanton and in conscious disregard of Dykstra's rights. Dykstra is therefore entitled to recover an award of punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

### New York Civil Right Law §§ 50 and 51—Right of Privacy

### (By Plaintiff Dykstra against Defendants Doubledown and Lane)

52. Paragraphs 1 through 51 of this Complaint are repeated and realleged as if fully set forth herein.

53. Doubledown and Lane's use of Dykstra's name in "Thedykstrareport.com" and "The Dykstra Report" unequivocally identify and associate the website and the newsletter with Plaintiff Dykstra, a well known former major league baseball player and a published investment strategist.

54. Doubledown and Lane have knowingly used Dykstra's name, within the State of New York, and elsewhere, for trade purposes without his written consent.

55. Doubledown and Lane's unlawful use of Dykstra's name has caused damages to Dykstra in an amount to be determined at trial.

56. Doubledown and Lane's knowing use of Dykstra's name entitles Dykstra to recover an award of punitive damages under New York Civil Rights Law § 51.

57. Doubledown and Lane's aforesaid acts have caused, and will continue to cause, substantial and irreparable harm to Dykstra and, unless restrained by this Court, will continue to cause damage to Dykstra.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully ask this Court to enter judgment in its favor as follows:

1. On the First Cause of Action, awarding TPC monetary damages plus interest;

2. On the Second Cause of Action, awarding TPC and Dykstra monetary damages plus interest and punitive damages;

3. On the Third Cause of Action, ordering Defendants Doubledown and Lane to release TPC's property to TPC and awarding TPC monetary damages plus interest and punitive damages;

4. On the Fourth Cause of Action, ordering Defendant Doubledown and Lane to turn over the subscription list to The Dykstra Report newsletter and all monies received by Doubledown and Lane for subscriptions to the newsletter to Dykstra and awarding Dykstra monetary damages plus interest and punitive damages;

5. On the Fifth Cause of Action, awarding Dykstra monetary damages plus interest and punitive damages;

6. Directing that Doubledown and Lane be preliminarily enjoined during the pendency of this action and permanently enjoined thereafter from using Dykstra's name without his consent

for trade purposes, from continuing to use the domain name "Thedykstrareport.com" and from soliciting subscriptions to the Dykstra Report newsletter;

    7.    Awarding TPC and Dykstra their costs, disbursements, and attorneys' fees as provided by law; and

    8.    Such other and further relief that this Court may deem just and proper.

Dated: New York, New York
       April 25, 2008

KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP

_____
Douglas F. Broder (DB 8406)
Rebecca L. Misner, Esq. (RM 8086)
599 Lexington Avenue
New York, New York 10022
Telephone: 212-536-3900
Facsimile: 212-536-3901
Email: douglas.broder@klgates.com
Email: rebecca.misner@klgates.com

*Attorneys for Plaintiffs TPC, LLC and Lenny Dykstra*

## DEMAND FOR JURY TRIAL

Plaintiffs TPC and Dykstra hereby demand a jury trial in this Action.

Dated: New York, New York
       April 25, 2008

                                                KIRKPATRICK & LOCKHART PRESTON
                                                GATES ELLIS LLP

                                                _____
                                                Douglas F. Broder (DB 8406)
                                                Rebecca L. Misner, Esq. (RM 8086)
                                                599 Lexington Avenue
                                                New York, New York 10022
                                                Telephone: 212-536-3900
                                                Facsimile: 212-536-3901
                                                Email: douglas.broder@klgates.com
                                                Email: rebecca.misner@klgates.com

                                                *Attorneys for Plaintiffs, TPC, LLC and Lenny Dykstra*