UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TPC OPERATING, LLC and LENNY DYKSTRA,<br><br>Plaintiffs,<br><br>-against-<br><br>DOUBLEDOWN MEDIA, LLC and RANDALL LANE,<br><br>Defendants. | Case No. 08 Civ. 3912(RB)<br><br>**ANSWER OF DEFENDANT TREND OFFSET PRINTING SERVICES, INC. TO SECOND AMENDED COUNTERCLAIMS; CROSS-CLAIM AGAINST PLAINTIFF/COUNTERCLAIM DEFENDANTS TPC OPERATIONS, LLC A/K/A TPC OPERATING, LLC and LENNY DYKSTRA; and DEMAND FOR JURY TRIAL** |
| DOUBLEDOWN MEDIA, LLC,<br><br>Counterclaimant,<br><br>-against-<br><br>TPC OPERATIONS, LLC, LENNY DYKSTRA, TREND OFFSET PRINTING SERVICES, INC., MITCH SHOSTAK and SHOSTAK STUDIOS, INC.,<br><br>Counterclaim-Defendants. | |

Counterclaim-Defendant Trend Offset Printing Services, Inc. ("Trend Offset"), on behalf of itself and no other party, as and for its Answer to the Second Amended Counterclaims of Defendant-Counterclaimant Doubledown Media, LLC ("Doubledown") and its Crossclaim against Counterclaim-Defendants TPC Operations, LLC and Lenny Dykstra, herein alleges as follows:

1. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of said Counterclaims.

2. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of said Counterclaims.

3. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 3 of said Counterclaims.

4. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 of said Counterclaims.

5. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 of said Counterclaims.

6. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6 of said Counterclaims.

7. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7 of said Counterclaims.

8. Denies the allegations set forth in Paragraph 8 of said Counterclaims, except Admits so much of said paragraph which alleges that Trend Offset is a corporation organized and existing under the laws of the State of California, with its principal place of business located in the State of California.

9. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9 of said Counterclaims.

10. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10 of said Counterclaims.

11. Denies the allegations set forth in Paragraph 11 of said Counterclaims, except Admits so much of said paragraph which alleges that Doubledown is asserting Counterclaims for breach of contract, quantum meruit, unjust enrichment, promissory estoppel, unfair competition,

copyright infringement, false designation of origin and false advertising, but denies any liability arising therefrom.

12. Denies the allegations set forth in Paragraph 12 of said Counterclaims as alleged against Trend Offset, and further denies knowledge or information sufficient to form a belief as to the truth of each other and further allegations set forth in said Paragraph.

13. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13 of said Counterclaims.

14. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14 of said Counterclaims.

15. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15 of said Counterclaims.

16. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16 of said Counterclaims.

17. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17 of said Counterclaims.

18. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of said Counterclaims.

19. Neither Admits nor Denies the allegations set forth in Paragraph 19, but refers to the document referenced therein for its exact terms, legal force and effect. To the extent that a further answer may be required, denies knowledge or information sufficient to form a belief as to the truth each other allegation set forth in said paragraph.

20. Neither admits nor denies the allegations set forth in Paragraph 20, but refers to the document referenced therein for its exact terms, legal force and effect. To the extent that a

further answer may be required, denies knowledge or information sufficient to form a belief as to the truth each other allegation set forth in said paragraph.

21. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of said Counterclaims.

22. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 22 of said Counterclaims.

23. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23 of said Counterclaims.

24. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24 of said Counterclaims.

25. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 25 of said Counterclaims.

26. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 26 of said Counterclaims.

27. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 27 of said Counterclaims.

28. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 of said Counterclaims.

29. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 29 of said Counterclaims.

30. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 30 of said Counterclaims.

31. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 31 of said Counterclaims.

32. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 32 of said Counterclaims.

33. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 33 of said Counterclaims.

34. Denies the allegations set forth in Paragraph 34 of said Counterclaims; except admits that it agreed to print certain materials furnished to it by TPC and Dykstra.

35. Denies the allegations set forth in Paragraph 35 of said Counterclaims; except admits so much of said paragraph which alleges that excerpts of the Second Issue are attached as Exhibit C to said Counterclaims.

36. Denies the allegations set forth in Paragraph 36 of said Counterclaims; except admits that the masthead lists Lane as Editor-in-Chief.

37. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 37 of said Counterclaims.

**COUNT I**
**(Against TPC and Dykstra)**

38. Repeats and realleges all of its prior responses set forth herein in response to the allegations set forth Paragraph 38 of said Counterclaims.

39. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 39 of said Counterclaims.

40. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 40 of said Counterclaims.

41. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 41 of said Counterclaims.

42. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 42 of said Counterclaims.

**COUNT II**
**(Against TPC and Dykstra)**

43. Repeats and realleges all of its prior responses set forth herein in response to the allegations set forth Paragraph 43 of said Counterclaims.

44. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 44 of said Counterclaims.

45. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 45 of said Counterclaims.

46. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 46 of said Counterclaims.

47. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 47 of said Counterclaims.

**COUNT III**
**(Against TPC and Dykstra)**

48. Repeats and realleges all of its prior responses set forth herein in response to the allegations set forth Paragraph 48 of said Counterclaims.

49. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 49 of said Counterclaims.

50. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 50 of said Counterclaims.

51. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 51 of said Counterclaims.

52. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 52 of said Counterclaims.

53. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 53 of said Counterclaims.

**COUNT IV**
**(Against TPC and Dykstra)**

54. Repeats and realleges all of its prior responses set forth herein in response to the allegations set forth Paragraph 54 of said Counterclaims.

55. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 55 of said Counterclaims.

56. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 56 of said Counterclaims.

57. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 57 of said Counterclaims.

**COUNT V**
**(Against TPC and Dykstra)**

58. Repeats and realleges all of its prior responses set forth herein in response to the allegations set forth Paragraph 58 of said Counterclaims.

59. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 59 of said Counterclaims.

60. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 60 of said Counterclaims.

61. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 61 of said Counterclaims.

62. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 62 of said Counterclaims.

**COUNT VI**
**(Against All Counterclaim Defendants)**

63. Repeats and realleges all of its prior responses set forth herein in response to the allegations set forth Paragraph 63 of said Counterclaims.

64. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 64 of said Counterclaims.

65. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 65 of said Counterclaims; except admits that an issue of The Players' Club was printed by Trend Offset.

66. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 66 of said Counterclaims.

67. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 67 of said Counterclaims.

68. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 68 of said Counterclaims.

69. Denies the allegations set forth in Paragraph 69 of said Counterclaims.

70. Denies the allegations set forth in Paragraph 70 of said Counterclaims.

71. Denies the allegations set forth in Paragraph 71 of said Counterclaims.

**COUNT VII**
**(Against All Counterclaim Defendants)**

72. Repeats and realleges all of its prior responses set forth herein in response to the allegations set forth Paragraph 72 of said Counterclaims.

73. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 73 of said Counterclaims except denies that Trend Offset published the Second Issue of The Player's Club magazine.

74. Denies the allegations set forth in Paragraph 74 of said Counterclaims.

75. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 75 of said Counterclaims.

76. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 76 of said Counterclaims.

77. Denies the allegations set forth in Paragraph 77 of said Counterclaims.

78. Denies the allegations set forth in Paragraph 78 of said Counterclaims.

79. Denies the allegations set forth in Paragraph 79 of said Counterclaims.

**COUNT VIII**
**(Against TPC and Dykstra)**

80. Repeats and realleges all of its prior responses set forth herein in response to the allegations set forth Paragraph 80 of said Counterclaims.

81. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 81 of said Counterclaims.

82. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 82 of said Counterclaims.

83. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 83 of said Counterclaims.

84. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 84 of said Counterclaims.

85. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 85 of said Counterclaims.

86. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 86 of said Counterclaims.

87. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 87 of said Counterclaims.

**COUNT IX**
**(Against All Counterclaim Defendants)**

88. Repeats and realleges all of its prior responses set forth herein in response to the truth of the allegations set forth in Paragraph 88 of said Counterclaims.

89. Denies the allegations set forth in Paragraph 89 of said Counterclaims.

90. Denies the allegations set forth in Paragraph 90 of said Counterclaims.

91. Denies the allegations set forth in Paragraph 91 of said Counterclaims.

92. Denies the allegations set forth in Paragraph 92 of said Counterclaims.

93. Denies the allegations set forth in Paragraph 93 of said Counterclaims.

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE**

94. Upon information and belief, Defendant-Counterclaimant Doubledown's claims are barred in whole or in part by the doctrine of estoppel.

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE**

95. Upon information and belief, Defendant-Counterclaimant Doubledown's claims are barred in whole or in part by the doctrine of unclean hands.

**AS AND FOR A THIRD AFFIRMATIVE DEFENSE**

96. Upon information and belief, Defendant-Counterclaimant Doubledown's claims are barred in whole or in part by licenses, express and implied, granted or authorized to be granted by Doubledown.

**AS AND FOR A FOURTH AFFIRMATIVE DEFENSE**

97. Upon information and belief, Defendant-Counterclaimant Doubledown's claims are barred in whole or in part by the doctrine of fair use.

**AS AND FOR A FIFTH AFFIRMATIVE DEFENSE**

98. Upon information and belief, Defendant-Counterclaimant Doubledown's claims are barred in whole or in part by doctrine of collateral use.

**AS AND FOR A SIXTH AFFIRMATIVE DEFENSE**

99. Upon information and belief, Defendant-Counterclaimant Doubledown's claims are barred in whole or in part by doctrine of copyright misuse.

**AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE**

100. Any infringements that may have been committed by Trend Offset were inadvertent and not willful.

**AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE**

101. Defendant-Counterclaimant Doubledown's damages, if any, are limited by the innocent intent and good faith of Counterclaim-Defendant Trend Offset.

**AS AND FOR A NINTH AFFIRMATIVE DEFENSE**

102. Upon information and belief, Defendant-Counterclaimant Doubledown's claims are barred in whole or in part because Doubledown has failed to mitigate its damages, if any.

**AS AND FOR A TENTH AFFIRMATIVE DEFENSE AND FIRST CROSSCLAIM AGAINST LENNY DYKSTRA AND TPC OPERATIONS, LLC**

103. Upon information and belief at all times relevant hereto, Lenny Dykstra ("Dykstra") was and is a resident of the State of California.

104. Upon information and belief at all times relevant hereto, TPC Operations, LLC ("TPC") was and is a California limited liability company, with its principal place of business located in the State of California.

105. At all times relevant hereto, Trend Offset was and is a California limited liability company with its principal place of business located in the State of California.

106. On or about April 25, 2008, Trend Offset was approached by Dykstra and TPC with a request to print the second issue of the magazine entitled "The Players' Club" (the "Magazine").

107. Trend Offset issued a quotation for the printing work requested by it of Dykstra and TPC.

108. On or about April 25, 2008, Dykstra, on behalf of himself and TPC executed the quotation, thereby entering into a contractual arrangement with Trend Offset for the printing of the Magazine, and any future issues of the Magazine (the "Contract"). A copy of said Contract is attached hereto labeled **Exhibit A**, and incorporated herein by reference as though fully set forth at length.

109. Pursuant to Paragraph 17 of the Contract, Dykstra and TPC agreed to:

> "Indemnify and hold harmless Trend from any and all loss, cost, expense and damages (including court costs and reasonable attorneys' fees) on account of any and all manner of claims, demands, actions and proceedings that may be instituted against Trend on grounds alleging that the said printing violates any copyrights or any proprietary right of any person or that it contains any matter that is libelous or obscene or scandalous, or invades any persons right to privacy or other personal rights. [Dykstra and TPC agree] at the customer's own expense to promptly defend and continue to the defense of any such claim, demand, action or proceeding that may be brought against Trend, provided that Trend shall promptly notify with respect thereto, and provided further that Trend shall give the customer such reasonable defense thereof."

110. On or about May 14, 2008, Trend Offset was served with a copy of the Answer and First Amended Counterclaims of Defendant-Counterclaimant Doubledown Media, LLC ("Doubledown"); thereafter, Trend Offset was served with Doubledown's Answer and Second Amended Counterclaims.

111. In said Answer with Counterclaims, Doubledown alleges Counterclaims against Trend Offset for copyright infringement, trademark infringement and unfair competition under

the Lanham Act. All of said Counterclaims as alleged against Trend Offset arise from and are related to the printing of the second issue of the Magazine by Trend Offset for Dykstra and TPC pursuant to the contract.

112. Pursuant to the terms and conditions of Dykstra and TPC's agreement to indemnify and hold Trend Offset harmless, Dykstra and TPC are liable to Trend Offset for all damages, costs, expenses and reasonable attorneys' fees incurred by Trend Offset in this action.

113. By reason of the foregoing, in the event judgment is rendered against Trend Offset in this action, Trend Offset is entitled to judgment against Dykstra and TPC, for all damages, costs, expenses and reasonable attorneys' fees incurred by Trend Offset herein.

## RELIEF REQUESTED

WHEREFORE, Counterclaim-Defendant Trend Offset requests the following relief:

1. Judgment in favor of Counterclaim-Defendant Trend Offset Printing Services, Inc. denying all relief requested in the Counterclaims of Defendant-Counterclaimant Doubledown Media, LLC, and dismissing said Counterclaims against it with prejudice;

2. Judgment as against Lenny Dykstra and/or TPC Operations, LLC on its crossclaim indemnifying it for all damages, costs, expenses and reasonable attorneys' fees incurred by Trend Offset Printing Services, Inc. in this action;

3. That Counterclaim-Defendant Trend Offset Printing Services, Inc. be awarded its costs of suit; and

4. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

In accordance with Fed. R. Civ. P. 38(b), Counterclaim-Defendant Trend Offset Printing Services, Inc. demands a trial by jury on all issues so triable.

DATED: June 19, 2008
Buffalo, New York

LIPSITZ GREEN SCIME CAMBRIA LLP

s/ Jeffrey F. Reina
By: ______________________________
Jeffrey F. Reina, Esq.
William M. Feigenbaum, Esq.

Attorneys for Counterclaim-Defendant
and Crossclaimant
Trend Offset Printing Services, Inc.
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
(716) 849-1333



TREND OFFSET PRINTING

**Quotation Number:** 408-118 / 16128
**Title Description:** The Players Club
**Quantity:** 25,000 (Total of 2 versions, all plates change)
**Trim Size:** 9.25" x 12"
**Pre-Press:** Client Provides PDF Page Files
Note: All digital files must be accompanied by a SWOP certified contract proof. In the absence of a certified contract proof, Trend Offset Printing will create an imposition proof for each page and will invoice per the miscellaneous price list.

**Proof Type:** **Cover:** Trend generates: 4/C Contract Color Hard Proof (Epson MatchPrint)
**Text:** Trend generates: 4/C Contract Color Hard Proof (Epson MatchPrint)
**Presswork:** **Cover:** 4/4 plus gloss uv 1/side **Text:** 4/4 **Insert:** 4/4 with perfs
**Paper:** **Cover:** 9pt CS2 cover **Text:** 70# CFS #3 **Insert:** 9pt CS2 cover
**Note:** Paper prices included in this quote are based on current market rates and are subject to change. Please see conditions affecting the price of paper and other general provisions in the "Paper Terms & Conditions Acknowledgement" form attached.

**Binding:** Perfect Bind on the 12" side
**Packaging:** **Pallets:** Convenient
**Delivery:** Our Dock / Will Call
**Schedule:** Quote subject to a mutually agreeable schedule based on available manufacturing time.
**Overs/Unders:** An over-run or under-run of 3% of the quantity ordered will constitute an acceptable delivery and shall be billed according to the actual quantity delivered.

**Pricing:**

| | 25,000 |
|---|---|
| **128PG+2PG+4PG** | $74,017 |
| (with supplied cover) | -($5,377) |

**Terms:** Subject to credit approval by Trend Offset Printing credit manager.

- Any applicable federal, state, or local taxes are not included in quoted price and will be added to the invoice.
- Freight rates exclude any fuel surcharge. A line item for fuel surcharge will be added based on the week the product was shipped. Rates are determined by the Department of Energy and are published weekly.
- The instructions, terms, and conditions appearing on the face and on page 2, and any attachments, are made part of this quotation.
- Additional thousands price can be used for either increased or decreased quantities, as long as the quantity is within 10% of the quantity quoted. Variances greater than 10% (plus or minus) must be re-quoted.
- Pre-Press services required due to files or proofs not meeting *TOP* specifications will be processed without notice as long as the incremental cost is $300.00 or less, and will be invoiced accordingly. *TOP* will notify the Customer if the charges exceed $300.00
- An energy surcharge may be added as a general percentage to the entire invoice (not including freight) based in current market conditions.
- The miscellaneous price list attached to this quote will be used for invoicing those services not covered under this quote.

**Customer Acceptance**
Signature: [signature] Date: 4/25/08
Print Name: Lenny K. Dykstra
Title: President

**Trend Offset Printing Services, Inc.**
Signature: [signature] Date: 4/25/08
Print Name: George Alvarez
Title: Sales Account Executive

TCP Operations
Lenny K. Dykstra
245 Park Ave
39th Floor
New York, NY 10167

Trend Offset Printing
3701 Catalina Street
Los Alamitos, CA 90720

Phone (562) 794-2449
Fax (562) 493-6840
galvarez@trendoffset.com

TREND OFFSET PRINTING

**Quote #: 408-118 (16128) – The Players Club – The Players Club**

TERMS AND CONDITIONS

1. QUOTATIONS/PRICES. The prices quoted herein are subject to press availability and paper stock and will remain in effect for 30 days or a period of time to be agreed upon, with the exception of paper price changes and excessive price increases in related products. Prices are based on scheduling work on a mutually agreeable deadline. Overtime rate may apply if pre-determined schedules are not adhered to by the Customer. Trend Offset Printing Services, Inc. ("Trend") reserves the right to rebid this job if, upon receipt of Customer input, there are variations requiring additional labor and/or material and/or the complexity of work to be done is different from the information on which the bid was based.
All quotations are for immediate acceptance. All quotations are based upon regular straight time hourly rates of wages and conditions prevailing at date of quotation and are subject to amendment or withdrawal at any time without notice prior to the receipt and acknowledgment by Trend of any acceptance thereof.
The acceptance of this order is based upon written specifications herein set forth only. It is further agreed that orders once started shall continue to completion without unreasonable delay due to failure to receive O.K. from the Customer and the material which he agreed to furnish.

2. QUANTITIES DELIVERED. Overruns of 3% or under runs of 3% shall constitute an acceptable delivery unless otherwise stated herein, and shall be billed according to the actual quantity delivered. Any mill or specialty paper orders not used due to a decrease in Customer requirement will remain the Customer's responsibility and will be billed accordingly. All UPS and overnight delivery charges are subject to a 15% handling fee.

3. TERMS OF PAYMENT. Net cash unless otherwise provided in writing. Interest on all past-due amounts from the due date until paid at the rate of 1 and 1/2% per month (18% annually). Claims for defects, damages, or shortages must be made by the Customer in writing within a period of five days after delivery of all or any part of the order. Failure to make such claim with the stated period shall constitute irrevocable acceptance and an admission that they fully comply with terms, conditions, and specifications. Invoices will become due and payable if purchaser discontinues business, or becomes insolvent, or involved in legal proceeding. All checks are received and credited subject to final clearance at par.

4. APPROVAL. All quotations, orders, contracts and/or revisions in same by or through Trend Sales Personnel are subject to approval by Trend Offset Printing Services, Inc.

5. ORDERS. Regularly entered orders cannot be canceled except upon terms that will compensate Trend against loss.

6. SKETCHES AND DUMMIES. Sketches, copy dummies and all preparatory work created or furnished by Trend shall remain Trend's exclusive property and no use of same shall be made nor any ideas obtained there from be used except upon compensation to be determined by Trend.

7. DRAWINGS, NEGATIVES AND PLATES. Art work, drawings, type, engravings, electrotypes, negatives, positives, plates, and other items when supplied by Trend shall remain Trend's exclusive property unless otherwise agreed in writing. Trend agrees to use them only on work authorized by the Customer. In the absence of specific written agreement any of the above after the completion of the order involving their use.

8. ALTERATIONS. Proposals are only for work according to the original specifications. If through Customer's error, or change of mind, work has to be done a second time or more, such extra work will carry an additional charge at prevailing rates for work performed.

9. PROOFS. Proofs will not be submitted unless originally contemplated and charged for in quotation. Special proofs or corrected proofs ordered by Customer will be charged for extra at current rates. Corrections, if any on proofs, must be plainly marked and returned with the original copy marked "O.K." or "O.K. as corrected" and signed by the person duly authorized to pass on same. If revised proof is desired, request must be made for the same when the first proof is returned. No responsibility for errors is assumed if work is printed as per Customer's O.K.

10. PRESS PROOFS. An extra charge will be made for press proofs, unless the Customer is present when the plate is made ready on the press, so that no press time is lost. Presses standing awaiting O.K. of Customer will be charged for at current rates for the time so consumed.

11. COLOR PROOFING. Because of the difference in equipment and conditions between the color proofing and the pressroom operations, a reasonable variation in color between color proofs and the completed job shall constitute an acceptable delivery.

12. COLOR MATCH. Colors or ink used, unless otherwise specified, will be our regular standard colors. Exact duplication of colors of ink and other materials is not guaranteed but every consistent effort will be made to follow copy. Color matching is left to other judgment of Trend and is accepted only on the basis of the variations usual to regular commercial matches. More exacting requirements are entirely Customer's responsibility and will necessitate press proofs with Customer's O.K. to be charged for additionally.

13. CUSTOMER'S PROPERTY. Trend shall charge the Customer, at prevailing rates, for handling and storing Customer's stock or Customer's printed matter held more than thirty (30) days. All Customer's property that is stored with Trend is at the Customer's risk and Trend is not liable for any loss or damage thereto caused by fire, water, leakage, breakage, theft, negligence, insects, rodents, or from any other cause, whether or not similar to those herein specifically enumerated. It is understood that the gratuitous storage of Customer's property is solely for the benefit of the Customer.

14. DELIVERY AND PACKING. Unless otherwise specified herein, goods will be packed as Trend may consider proper, and delivery to common carrier shall constitute delivery. An extra charge shall be made for special packing or shipping not specified herein. Unless otherwise specified, the price quoted is for a single shipment F.O.B. point of manufacture. All estimates are based on continuous and uninterrupted delivery of complete order, unless specifications distinctly state otherwise. Any delivery dates set forth on this order are approximate and are furthermore subject to Customer's prompt delivery date of this contract. Any shipment postponed by the Customer beyond original date specified shall be billed and paid for as of the original delivery date, title of goods passing to the Customer on billing Customer shall assume all risks and pay all expenses in connection with any storage of Customer's property. Trend, as bailee, retains the right to possession of said goods until payment or tender of the price and of charges incurred in connection with any storage of said goods.

15. ACCEPTANCE. The cutting, printing, perforating, numbering, punching, folding, mounting or otherwise altering of goods by the Customer or his agent shall also constitute acceptance, and therefore Trend shall not be liable for any stock furnished by Customer to Trend for manufacture of said goods, or for any claim whatsoever pertaining to, arising from or in any way connected with the goods delivered. In the event that the goods delivered to Customer by Trend are not satisfactory to Customer, such expense be incurred by Customer, that Trend shall not be liable to Customer for any part of same. Normal spoilage is to be allowed by Customer.

16. PAPER STOCK FURNISHED BY CUSTOMER. Paper stock, inserts, reply cards and other materials furnished by the Customer shall be properly packed, free from dirt, grit, torn sheets, bad splices, etc., and shall comply with the printer's specifications for manufacturing and materials. Additional costs due to delays, impaired production, or the necessity to repair or replace those materials because of failure to meet those standards, or meet production schedules in the case of product content materials, shall be charged to the Customer at our standard rates. Furnished semi finished materials shall include a manufacturing waste allowance that is deemed adequate, allow for bindery spoilage and shall be adjusted to the produced count.

17. INDEMNIFICATION. The Customer shall indemnify and hold harmless Trend from any and all loss, cost, expense, and damages (including court costs and reasonable attorney fees) on account of any and all manner of claims, demands, actions, and proceedings that may be instituted against Trend on grounds alleging that the said printing violates any copyrights or any proprietary right of any person or that it contains any matter that is libelous or obscene or scandalous, or invades any person's right to privacy or other personal rights. The Customer agrees, at the Customer's own expense, to promptly defend and continue to the defense of any such claim, demand, action, or proceeding that maybe brought against Trend, provided that Trend shall promptly notify the Customer with respect thereto, and provided further that Trend shall give the Customer such reasonable defense thereof.

18. AGREEMENTS. All agreements are made and all orders accepted contingent upon strikes, fires, accidents, war, unusual market conditions, delays or carriers, and all other causes unavoidable or beyond Trend's control, whether or not similar to those herein specifically enumerated. Trend will not be responsible for possible loss or damage which may be brought about by such causes.

19. TAXES. The Customer agrees to reimburse Trend on demand for any federal or state sales tax or similar tax or additional expense caused by the result of governmental action which Trend may be required to pay by reason of the execution or performance of this contract.

20. DISPUTES. This Agreement shall be construed in accordance with and governed by the laws of the State of California. If any term under this Agreement is determined to be unenforceable, all other parts of the Agreement will remain in full force and effect. The parties hereto stipulate that this Agreement was entered into and is to be performed exclusively in Orange County, California. The parties agree that if any dispute, legal or other action is instituted regarding any of the terms of this Agreement, then the prevailing party will pay all costs including attorney's fees. The parties agree to waive their rights to trial by jury.

21. LIMITATION OF LIABILITY. In the event of a material breach of this Agreement by Customer, Customer's liability shall be limited to the actual direct costs to Trend (costs shall be defined as the loss of press and bindery time as defined in the attached price list). In the event of a material breach of this Agreement by Trend, Trend's liability shall be limited to the manufacturing costs of the defective pages or publication. Neither party shall be liable for special, incidental, exemplary, or consequential damages, (including without limitations lost profits or loss of good will), or any damages or expenses arising out of any third-party claims, except as otherwise specified in this Agreement.

22. CORPORATE AUTHORIZATION. If Customer is a corporation, then this Agreement is executed by authority of its Board of Directors and any person signing on behalf of Customer personally and unconditionally guarantees Customer's performance herein. Any person signing this Application on behalf of the Customer who has not been granted the Customer's express authority to obligate the Customer, shall be personally liable for and guarantees the obligations of Customer set out herein. If this Agreement is made on the behalf of a corporation and that corporation defaults on this Agreement, then it is understood and agreed that the person signing this Agreement personally and irrevocably guarantees any and all debts of the corporation to Trend.

[signature] 4/25/08

Customer Acknowledgement Date

California
3701 Catalina Street
Los Alamitos, CA 90720
T 562 598 2446
F 562 493 6840
WEST

Texas
2323 McDaniel Drive
Carrollton, TX 75006
T 972 243 3556
F 972 243 5933
SOUTHWEST

Florida
10301 Busch Drive North
Jacksonville, FL 32218
T 904 696 8675
F 904 696 8676
SOUTHEAST

TRENDOFFSET.COM



TREND OFFSET PRINTING

## Paper Terms and Conditions Acknowledgement

In an effort to provide our customers with the utmost flexibility, timeliness and competitive paper pricing, Trend Offset Printing will routinely utilize our vast inventory of fine printing papers to manufacture your product. For your convenience, Trend Offset Printing has access to over 100 sizes, types, and grades for just in time delivery. The information below outlines our paper terms and conditions.

**General Paper Provisions:**
Upon the mutual agreement of both Printer and Customer in writing, changes may be made in delivery schedules, specifications as to quantities, specifications as to finished sizes and page count, specifications as to paper or any other matters affected by the conditions referred to above. In the event Customer changes delivery schedule, quantity, page count or finished size without mutual agreement of Printer in writing, Customer will be financially responsible for balance of unused paper that Printer has secured for job(s) currently in and / or scheduled for production. If Printer purchases paper on behalf of Customer, and Customer leaves Printer prior to using such paper, then Customer agrees to financially reimburse Printer for any unused paper. Unused paper is defined as paper on printers floor, off-site storage locations, or in transit from the vendor whom the paper was purchased.

**Paper Price:**
The agreed upon contract price includes paper priced a of the date of the contract. Paper prices are market driven and subject to change at any time. In the event the cost of paper on date of delivery of paper exceeds the paper cost on the date of this contract, Trend Offset Printing reserves the right to charge customer the added paper cost to the contract price. If consumption of paper in contract exceeds 44,000 lbs, printer agrees to provide customer 30 days written notice of stated paper price increase in the contract price.

**Paper Shortage Clause:**
Printer shall not be liable for damages, either proximate or remote, arising in any way from its failure to make or delay in making delivery because of its inability to obtain paper in the amounts and grades specified herein or arising in any way from any circumstances or other unavoidable cause beyond the control of Printer. Within a reasonable time after receiving knowledge of any condition referred to above, Printer shall give notice to customer of such condition.

**Quantity Variation:**
Variations in quantity of three (3) percent over and three (3) percent under quantities ordered shall constitute acceptable delivery, and the excess or deficiency shall be charged or credited at the additional rate stated in the price schedule.

Accepted by Customer: **The Players Club**
**408-118 (16128) – The Players Club**

Signature: [signature] Date: 4/25/08

PG 3/3

California
3701 Catalina Street
Los Alamitos, CA 90720
T 562 598 2446
F 562 493 6840
WEST

Texas
2323 McDaniel Drive
Carrollton, TX 75006
T 972 243 3556
F 972 243 5933
SOUTHWEST

Florida
10301 Busch Drive North
Jacksonville, FL 32218
T 904 696 8675
F 904 696 8676
SOUTHEAST

TRENDOFFSET.COM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TPC OPERATING, LLC and LENNY DYKSTRA,

Plaintiffs,

-against-

DOUBLEDOWN MEDIA, LLC and RANDALL LANE,

Defendants.

DOUBLEDOWN MEDIA, LLC,

Counterclaimant,

-against-

TPC OPERATIONS, LLC, LENNY DYKSTRA, TREND OFFSET PRINTING SERVICES, INC., MITCH SHOSTAK and SHOSTAK STUDIOS, INC.,

Counterclaim-Defendants.

Case No. 08 Civ. 3912(RB)

I, Pamela M. Johnson, hereby certify that I am a member of Lipsitz Green Scime Cambria LLP, attorneys for the Counterclaim-Defendant herein and that on June 20, 2008 I caused to be served a true and correct copy of the Answer of Defendant Trend Offset Printing Services, Inc. to Second Amended Counterclaims against Plaintiff/Counterclaim Defendant TPC Operations LLC a/k/a TPC Operating, LLC and Lenny Dykstra; and Demand for Jury Trial with Exhibit A, by placing same into postage paid envelope and depositing with the United States Postal Service for delivery to:

Daniel M. Petrocelli
O'Melveny & Myers LLP
1999 Avenue of the Stars
Suite 700
Los Angeles, CA 90067

s/ Pamela Johnson

Pamela Johnson